STATE OF NORTH CAROLINA v. SAMUEL RAY MARR

No. 7530SC173

(Filed 18 June 1975)

1. **Indictment and Warrant § 5— indictment — absence of "X" on endorsement**
   A bill of indictment was not rendered invalid by the absence of the letter "X" or some other mark in an endorsement on the indictment stating "this bill found ............ A True Bill."

2. **Automobiles § 113— involuntary manslaughter — death from car accident**
   In this involuntary manslaughter prosecution, the State's evidence was sufficient to show a causal connection between the automobile accident in question and the decedent's death for submission of the case to the jury where it tended to show that a car driven by decedent was struck by defendant's car traveling at high speed, that decedent was dead when a doctor saw her in a hospital emergency room, that decedent's death resulted from a tear in the aorta, and that such a tear had to be caused by an injury received to the body.

APPEAL by defendant from *Friday, Judge.* Judgment entered 17 October 1974 in Superior Court, SWAIN County. Heard in the Court of Appeals 7 May 1975.

Defendant was tried upon a bill of indictment charging that on 20 March 1974 he did unlawfully "kill and slay" one Bertie Burchfield Thomas. Defendant pleaded not guilty.

In pertinent part, the evidence for the State tended to show the following facts. Dr. Paul Sale, a licensed medical physician, testified that on the evening of 20 March 1974 he saw the deceased, Bertie Thomas, in the emergency room of Swain County Hospital and that she was dead. He found abrasions, scrapes, and contusions about the face, neck, and chest. Dr. Sale was permitted to consider the findings and report of Dr. Robert S. Boatwright, an expert in the field of pathology. The deceased was examined by Dr. Boatwright, and his report indicated that he found a laceration of the aorta, the main artery which leaves the heart and feeds the entire body. According to Dr. Sale, a tear to the aorta had to be caused by some trauma—an injury received to the body. In his opinion, Bertie Thomas died as a result of the tear in the aorta.

Ivan Hugh Gibby, grandson of the deceased, testified that on 20 March 1974 he was with his grandmother, Bertie Thomas, and his uncle, Mr. McCoy, in a car being driven by his aunt, Mrs. Monteith. Prior to the accident, they had been riding around and had driven to a market. Their car was three-fourths of a mile on U. S. 19 coming west toward Bryson City. This witness was in the back seat talking to his uncle, and he saw a yellow car in the process of passing a green car. The yellow and green cars were just coming out of a curve. The yellow one pulled back in front of the green car and then swerved back into Mrs. Monteith's lane and was coming sideways when it hit the Monteith car. According to this witness, the yellow car was traveling around seventy-five to eighty miles per hour when he last saw it before the collision.

Ralph S. McCoy testified that he was seated behind Mrs. Thomas and that he saw two cars coming around the curve together. The yellow car got around the green one and then started sliding sideways and struck the car in which he was riding.

Charles Ball, an ambulance driver, testified that he went to the accident scene, saw Mrs. Thomas seated on the right front seat of a 1963 Ford, and took her to the Swain County Hospital.

Phyllis Lowe, driver of the green car, testified that the yellow car passed her, got back into its lane, and then went out

of control—crossing into the other lane and hitting another car. She stated that the yellow car did not seem to be out of control as it passed her.

Samuel G. Ball, a member of the North Carolina Highway Patrol, testified concerning the position of the cars involved in the accident and the characteristics of the highway. At the point where the vehicles were located on U. S. 19 there is a straight stretch of road to the east for approximately two-tenths of a mile, and about three hundred yards to the west there is a curve. The road going east is painted with a double yellow line for over four-tenths of a mile until the next passing zone. "Coming west" towards Bryson City, the double yellow line extends all the way into town. From Bryson City to the scene of the collision, the road is posted at thirty-five miles per hour in three places. Patrolman Ball observed tire impressions leading from the yellow vehicle in a westerly direction towards Bryson City. The tire impressions were in the left lane for approximately two hundred feet, then they traveled back into the right lane and then crossed into the left lane for another 145 feet. According to Patrolman Ball, there was no odor of alcoholic beverage about defendant.

Defendant's evidence tended to show the following facts. Dr. Sale testified that defendant had some injuries to the head and had difficulty remembering details surrounding the accident.

Defendant Samuel Marr testified that he was looking for some gas due to the gas shortage and had come into Bryson City. He went past a gas station, and the next thing he remembered was being in a patrol car. Defendant's aunt testified that defendant's car was yellow. Several witnesses testified as to defendant's good character.

The jury found defendant guilty of involuntary manslaughter. He was sentenced to a term of not less than four years nor more than seven years in the county jail. Execution of sentence was suspended for five years upon compliance with certain specified conditions.

Defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General H. A. Cole, Jr., for the State.*

*Holt, Haire & Bridgers, by R. Phillip Haire, for defendant appellant.*

State v. Marr

MARTIN, Judge.

[1]   By his first assignment of error, defendant contends that
the indictment in this action is not valid.

The bill of indictment shows the following endorsement:
"Those marked X sworn by the undersigned foreman, and ex-
amined before the Grand Jury, and this bill found _____ A
True Bill."

Defendant contends that the mere absence of some mark
from the blank space renders the bill invalid. His reasoning
seems to be that (1) a form bill of indictment does not indicate
the findings of the grand jury until their findings are expressed
in some way such as placing an "X" in the blank space, and
(2) it cannot be inferred that the grand jury intended to return
a true bill because it is equally as easy to infer from the endorse-
ment, as presently written, that they intended not to return a
true bill.

Defendant's first line of reasoning presupposes that the
letter "X" is a symbol which indicates approval. This is not
necessarily true. Indeed, in State v. Cox, 280 N.C. 689, 187 S.E.
2d 1 (1972), a defendant argued that the grand jury meant not
to return a true bill because an "X" was placed in the endorse-
ment before the words, "a True Bill." As for defendant's second
line of reasoning, we fail to see the ambiguity, as suggested by
defendant, resulting from the blank space. Had the grand jury
meant not to return a true bill, they could have inserted the
word "not" in the space. Aside from the foregoing, even if we
assume for the sake of argument that the absence of the letter
"X" or some other mark results in an ambiguity, defend-
ant's contention cannot be sustained. State v. McBroom, 127
N.C. 528, 37 S.E. 193 (1900), which held by a divided Court
that the endorsement "a true bill" is essential to the validity of
an indictment, was expressly overruled in State v. Sultan, 142
N.C. 569, 54 S.E. 841 (1906). State v. Avant, 202 N.C. 680,
163 S.E. 806 (1932).

[2]   In his next assignment of error, defendant contends that
his motion for nonsuit should have been allowed because the
State failed to show any causal connection between the wreck
and the injuries which caused the death of Bertie Thomas.

In considering defendant's motion for judgment as of non-
suit, the trial judge must consider the evidence in the light most

favorable to the State, take it as true, and give the State the benefit of every reasonable inference to be drawn therefrom. If there is evidence, direct, circumstantial, or a combination of both, from which the jury can find that the offense charged was committed by the defendant, the motion for judgment as of nonsuit must be overruled. *State v. Jones*, 287 N.C. 84, 214 S.E. 2d 24 (1975). In the present case, the evidence would clearly permit an inference that the fatal injury to Bertie Thomas resulted from the automobile wreck. This assignment of error is overruled.

We have carefully examined defendant's remaining assignments of error, which relate to the charge of the trial court to the jury, and find them to be without merit.

No error.

Judges CLARK and ARNOLD concur.