State v. Crabb

STATE OF NORTH CAROLINA v. JOSEPH DONALD CRABB

No. 8118SC534

(Filed 15 December 1981)

### 1. Automobiles § 113.1— involuntary manslaughter—sufficiency of evidence

The charge of involuntary manslaughter was properly submitted to the jury where the evidence tended to show that defendant was driving on a curvy road at such a speed that other occupants of the car were screaming and begging him to slow down; the road was posted with traffic signs warning of curves; defendant had been drinking; the car driven by defendant ran off the road and collided with a tree; the car and the site of the accident revealed extensive damage; there were skid marks totaling 141 feet, 3 inches; the body of deceased was found twenty-six feet from the car soon after the accident occurred; and the cause of death was determined to be a fractured skull.

### 2. Automobiles § 131.1— failure to render assistance after an automobile accident —sufficiency of evidence

The trial court properly denied defendant's motion to dismiss the charge of failure to render assistance after an automobile accident, a violation of G.S. § 20-166, where defendant's testimony alone was sufficient to provide the inference that defendant knew the victim was injured and willfully failed to render assistance.

### 3. Automobiles § 114— negligent driving—incorrect summary of evidence

In a criminal case in which defendant was charged with involuntary manslaughter and failure to stop the vehicle he was driving at the scene of an accident, among other things, the trial court erred in its summary of the evidence by placing before the jury a defense to excuse any wrongful driving by defendant when he had alleged that he was never behind the wheel of the car. However, the trial judge made it clear that defendant foremost maintained that he was not driving the car, and the portion of the charge objected to appeared favorable to the defendant by presenting a defense to the crimes; therefore, there was no prejudicial error.

### 4. Criminal Law § 117.4— instruction on accomplice—error but not prejudicial

The trial court erred in instructing the jury that one of the State's witnesses was an accomplice rather than instructing the jury to make its decision based upon what the evidence showed; however, as (1) the charge read as a whole showed that the effect of the instruction was to inform the jury that the witness had an interest in the case, and (2) an instruction requiring the jury to make a finding that the witness was an accomplice was specifically tendered by defendant, the instruction did not constitute prejudicial error.

APPEAL by defendant from *Rousseau, Judge.* Judgment entered 4 February 1981 in Superior Court, GUILFORD County. Heard in the Court of Appeals 10 November 1981.

Defendant was indicted for manslaughter, careless and reckless driving, failure to stop the vehicle he was driving at the scene of an accident, and failure to leave his name and render medical assistance to the person injured in the accident.

At trial State presented Linda Milam, *nee* Lawson, who testified that she picked up defendant in her car in Danville, Virginia, at about 2:00 p.m. on 16 May 1980. Tony Mitchell and another female friend joined them and they all went to Hyco Lake. They later decided to go shopping in Greensboro but got lost and were still riding around late that night. Defendant had been driving the car the whole time except for a short period before and after a license check. All four occupants of the car had been drinking beer. Shortly before 12:00 that night, they were on McConnell Road outside of Greensboro when the accident occurred. Milam testified that the road was curvy, the car was going fast, and the others were begging and screaming for defendant to slow down the car but he would not. She stated that all she remembered was hitting her head on the dashboard but other evidence showed that the car had veered off the road on a curve and collided with a tree. Defendant pulled Milam and the other girl out of the car but they could not locate Tony Mitchell after searching for five to ten minutes in the dark. Upon leaving the scene to seek aid, Milam asked defendant if he was going to get Tony some help and he replied, "No," that they were going to Danville. The two girls, followed by defendant, then ran to a house where they were allowed inside and defendant told the occupants that they had been hitchhiking. Milam overheard defendant tell his mother, "I have been driving Linda's car. . . . I wrecked it. . . . I killed Tony." Defendant's mother picked them up and was returning to Danville when they were stopped by the highway patrol. Milam told the officer that she was driving the car because she was scared that she had let defendant drive the car without having a driver's license.

A passing motorist saw the wrecked car, described as a total loss, and a body lying by the road at approximately 12:15 a.m. and called the police. Highway Patrolman Gary Brown investigated the scene of the accident at approximately 12:45 that night and found the body of Tony Mitchell, lying flat on its back, about twenty-six feet from the wrecked vehicle. The car had body damage on most of its parts with a large dent in the driver's

door, windows broken and the windshield just slightly "popped out." The officer found a section of earth removed from the ditch embankment, skid marks on the road of forty-five feet, two inches and marks from the ditch embankment to the trees of ninety-six feet, one inch. Bark had been knocked off the trees and one tree had been partially uprooted in the vehicular path. McConnell Road is a paved, two-lane road with several sharp curves which have been marked by advance curve signs. The medical examiner who was summoned to the scene testified that in his opinion the death of Tony Mitchell was due to a fractured skull.

Officer Brown testified that he had pulled defendant's mother's car after his investigation and that Ms. Milam informed him that she had been driving the car involved in the accident. Defendant concurred in her story that she ran off the road when something ran in front of the car. Two days later, Ms. Milam, defendant and his mother came to the police station to change their statement. Defendant and Milam told the police that in fact defendant had been driving the car when the accident occurred. Defendant stated that when they came to the curve, the brakes gave out. Officer Brown later tested the brakes which had indications that they were possibly in a faulty condition.

Defendant's testimony was that Milam was driving the car when something ran out in front of her and they wrecked. He stated that he pulled the two girls out of the car but could not find Tony Mitchell even though he went up and down the road shining a cigarette lighter. He acknowledged telling the occupants of the house from which he called his mother that they were hitchhiking but stated that he told this story at the urging of Linda Milam. He stated that they were actually looking for the accident site in his mother's car when they were pulled over by the highway patrol. Defendant acknowledged changing his statement to the police but said that he was told by the Lawsons that Ms. Milam's brothers were going to beat him up if he did not tell the police that he was driving the car.

The jury returned a verdict of guilty of involuntary manslaughter and failure to render assistance at the scene of an accident. From a judgment sentencing defendant to a prison term of two years as a "Committed Youthful Offender," defendant appealed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Frank P. Graham, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Nora B. Henry, for defendant appellant.*

HEDRICK, Judge.

[1] In his first assignment of error, defendant contends that the court erred in denying his motion to dismiss and submitting the charge of involuntary manslaughter to the jury. He presents a two-fold argument: that the State failed to prove that defendant's driving was the proximate cause of Mitchell's death and that there was insufficient evidence presented that the driving was done in a culpably negligent manner.

Involuntary manslaughter is the

> unlawful and unintentional killing of another human being without malice and which proximately results from the commission of an unlawful act not amounting to a felony or not naturally dangerous to human life, or from the commission of some act done in an unlawful or culpably negligent manner, or from the culpable omission to perform some legal duty.

*State v. Everhart,* 291 N.C. 700, 702, 231 S.E. 2d 604, 606 (1977).

In ruling upon a motion for nonsuit, the trial judge considers the evidence in the light most favorable to the State and gives every reasonable inference in favor of the State. *State v. Everhart, supra.* The motion must be denied if there is evidence —direct, circumstantial, or a combination of both—from which the jury can find that the charge contained in the bill of indictment or warrant was committed by the defendant. *State v. Marr,* 26 N.C. App. 286, 215 S.E. 2d 866, *cert. denied and appeal dismissed,* 288 N.C. 248, 217 S.E. 2d 673 (1975).

In the case at hand the following evidence, viewed most favorably to the State, was presented: At approximately midnight, defendant was driving on a curvy road at such a speed that other occupants of the car were screaming and begging him to slow down. The road was posted with traffic signs warning of curves. Defendant had been drinking. The car driven by defendant ran off the road and collided with a tree. At the site of the

accident were found a torn-up earth embankment, skid marks totaling 141 feet 3 inches, one partially uprooted tree, bark removed from several other trees, and a car which had been extensively damaged. The deceased was not found in the car immediately after the accident. The body of the deceased was found twenty-six feet from the car soon after the accident occurred and the cause of death was determined to be a fractured skull.

We find the above evidence sufficient to permit the inference that the fatal injury to Tony Mitchell was a proximate result of the automobile accident which occurred due to the culpably negligent driving of defendant. The motion for nonsuit was properly denied.

[2] In his next assignment of error defendant argues that the court erred in denying his motion to dismiss the charge of failure to render assistance after an automobile accident, a violation of G.S. § 20-166. Again, we hold the evidence, viewed in the light most favorable to the State, sufficient to have been submitted to the jury. Defendant himself testified that "I figured that [Tony Mitchell] was knocked out or something. . . . I did not tell the [occupants of the house] that there might be a man injured nor did I tell them I wanted to call the police or an ambulance." Defendant stated that he knowingly lied about hitchhiking, rather than disclose the accident, because he was scared. This evidence alone is competent to provide the inference that defendant knew that Tony Mitchell was injured and willfully failed to render assistance. This assignment of error is overruled.

[3] Defendant next contends the court committed prejudicial error in its summary of the evidence and statement of defendant's contentions by placing before the jury a defense to excuse any wrongful driving by defendant, when in fact he has steadfastly alleged that he was never behind the wheel of the car. That portion of the charge objected to reads in its entirety as follows:

> On the other hand, the defendant says and contends that you ought not to be so satisfied beyond a reasonable doubt that he is guilty of driving at a speed greater than was reasonable and prudent. In the first place, he says and contends that he wasn't driving this car. And, in the second place, he says and contends if he was driving, forty to fifty miles per hour is reasonable speed on any blacktop road in

the State of North Carolina, but it was not because of the speed that caused him to have that wreck, but because somebody ran out in the road or somebody pulled on the steering wheel, and that he was driving as a reasonable and prudent person would operate an automobile under those existing circumstances.

As a general rule, any misstatement of defendant's contentions must be brought to the court's attention before the jury retires in order for the error to be considered on appeal, unless the misstatement was so gross that an objection at trial was unneeded. *State v. Lankford*, 28 N.C. App. 521, 221 S.E. 2d 913 (1976).

Defendant asserts that the court's instruction had to mislead and divert the jury from his sole assertion at trial that he was not the operator of the accident vehicle. Defendant is correct that the only evidence of his driving the car is his recanted statement to Trooper Brown that he was driving when the brakes failed and the testimony of Linda Milam in which she stated that defendant was driving when, alternately, the deceased grabbed the wheel or something ran in front of the car. However, the trial judge makes it clear that defendant foremost has maintained that he was not driving the car. The latter part of this instruction, being preceded by the phrase "if he was driving," further bolsters defendant's position. Furthermore, the portion of the charge objected to simply appears favorable to the defendant by presenting a defense to the charge. *State v. Bush*, 289 N.C. 159, 221 S.E. 2d 333, *death penalty vacated*, 429 U.S. 809, 97 S.Ct. 46, 50 L.Ed. 2d 69 (1976). We find no prejudicial error.

[4] Defendant also argues that the court erred in instructing the jury that Linda Lawson [Milam] was an accomplice. He contends that by this statement the court implied to the jury that the crimes were in fact committed and the defendant was the principal. The instruction given by the court is as follows:

Now, there is evidence which shows that Linda Lawson, who was a witness, was also an accomplice in the commission of the crimes that are charged in this case.

An accomplice is a person who joins with another in the commission of the crime. An accomplice may actually take

part in acts necessary to accomplish the crime or she may knowingly help or encourage another in the crime, either before or during its commission. An accomplice is considered by law to have an interest in the outcome of the case.

*Since this witness was an accomplice,* you should examine every part of her testimony with the greatest care and caution. If after doing so, however, you believe this testimony in whole or in part, you should treat what you believe the same as any other believable evidence. [Emphasis added.]

The testimony of an accomplice testifying for the prosecution is ordinarily regarded as that of an interested witness. *State v. Harris,* 290 N.C. 681, 228 S.E. 2d 437 (1976). Upon timely request, the trial judge is required to instruct the jury to carefully scrutinize the accomplice testimony and it is his duty to correctly state the law on this principle. *Id.*

Although we agree that the better practice to be followed in this type of charge is for the trial judge to instruct the jury to make its decision based upon what the evidence shows, not every poorly stated instruction constitutes such prejudicial error as to require a new trial. *State v. Hardy,* 293 N.C. 105, 235 S.E. 2d 828 (1977). An instruction as to the credibility of a witness is a subordinate feature of the case. *State v. Eakins,* 292 N.C. 445, 233 S.E. 2d 387 (1977). In the case at hand, although the trial judge did improperly charge the jury that the witness was an accomplice, he was not instructing that a fact that was in issue had been established. *See, State v. Spicer,* 299 N.C. 309, 261 S.E. 2d 893 (1980). We find the error, if any, to be harmless since the charge read as a whole clearly shows that the effect of the instruction was to inform the jury that the witness had an interest in the case and to urge them to weigh her testimony in a careful manner. *State v. Saults,* 294 N.C. 722, 242 S.E. 2d 801 (1978). Additionally we note that the instruction on accomplice testimony, which would have in fact required the jury to make the finding that the witness was an accomplice, was specifically tendered by defendant. Defendant obviously at the time of his request for this instruction did not consider it prejudicial for the witness to be found an accomplice and therefore any error which occurred was invited by defendant. *State v. Hardy, supra.* This assignment of error is overruled.

Defendant next contends that he was prejudiced by the court's ruling which limited his cross-examination of the husband of Linda Milam and thereby prevented him from establishing the bias of the witness. We do not agree. The witness later answered the very question defendant was prevented from asking upon objection and testified that he was married to Linda Milam, was worried about the case and wanted to help his wife. We find no error.

Finally, defendant assigns error to the court's ruling which prevented him from presenting evidence of the character and reputation of Linda Milam through another witness. Even if this ruling was in error, it would not be prejudicial error. The record contains abundant evidence to apprise the jury that the testimony of Ms. Milam should be carefully scrutinized for possible bias or fabrication and the trial judge further instructed the jury to this effect. This assignment of error is also overruled.

We find that the defendant received a trial free from prejudicial error.

No error.

Judges CLARK and MARTIN (Harry C.) concur.