State v. Hawkins

────────────

STATE OF NORTH CAROLINA v. OID MICHAEL HAWKINS

No. 825SC157

(Filed 19 October 1982)

**Criminal Law § 101.2— juror's visit to crime scene—discussion of lighting at crime scene during jury deliberations**

Defendant's motion for appropriate relief was properly denied where the motion was accompanied by affidavits of four of the jurors which stated that during deliberation they used information related to them by a juror concerning the degree of lighting which he observed on a visit to the scene of the crime since there was considerable testimony as to the visibility during the commission of the offenses, since the findings of the court were amply supported by the evidence, and since the affidavit of the four jurors did not contain additional or different matters not in evidence at trial.

APPEAL by defendant from *Barefoot, Judge.* Judgment entered 18 September 1981 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 16 September 1982.

Defendant was indicted and convicted for attempted safecracking, felonious breaking or entering, and possession of housebreaking tools, and given consecutive sentences of five years imprisonment on each conviction.

State's evidence was that a Wilmington police officer responded to a call to the Winter Park Texaco Station at about 4:30 a.m. on 9 July 1981. The building no longer functioned as a full service station, but had been converted into a convenience store with large windows in the front of the store and fluorescent lights which stayed on all of the time. There was a floor safe at the front of the building, and a burglar alarm that was sensitive to movement within the building.

The officer saw a man dressed in a black t-shirt inside the building rise from a crouch at the front of the station and move toward a hole at the back of the station. The officer ran to the back of the station where he found a hole punched through the concrete blocks which formed the back wall of the station. A street light provided good lighting of the area. A man in a black t-shirt was walking on a street behind the station. No one else was visible. Five to ten seconds had passed since the officer had seen the man move to the back of the building.

The officer called to the man, who began running. The man was chased into a cornfield, where he disappeared briefly. After the officer called for assistance the defendant was found crouching in the field. A pair of brown work gloves were found under defendant. A search of defendant's person revealed a pair of pliers and a punch. The officer had seen defendant throw something into the bushes during the chase; a search revealed a radio transceiver. There was a grayish white powder on the back of defendant's shirt. An officer got the same type of powder on his clothes when he crawled through the hole in the back of the station. The safe inside the station had been pried open. Several tools, including hammers, a pry bar, a screwdriver, and a punch, were found around the safe.

Defendant's evidence was that he had met a girl in a lounge around 11:30 or 12:00 p.m. They had left in her car, going first to

Wrightsville Beach and then to her trailer. When defendant left the trailer at about 3:30 a.m., the girl's car would not start. He had crawled under it on some gravel to try to fix it, but could not. He had then started hitchhiking back to his car. Another girl gave him a ride part of the way. He was walking when he reached the vicinity of the Texaco station and went into the woods behind the station to urinate. He heard someone yell at him from the station. He could not see well enough to identify the person as a police officer, but could tell that the person was carrying something in his hand. Defendant began running because he was frightened and did not realize that he was being chased by an officer until he was found hiding in the cornfield. He had not seen the brown gloves until he got to the police car. Defendant admitted on cross examination that he had been convicted of 68 felonies, including safecracking, arising from about 25 break-ins in 1975.

An officer testified for the State on rebuttal that defendant had not mentioned being with a girl or working on a car when he was arrested.

*Attorney General Edmisten by Special Deputy Attorney General T. Buie Costen, for the State.*

*Poisson, Barnhill & Britt by Stuart L. Egerton, for the defendant.*

MARTIN (Robert M.), Judge.

Defendant's motion for nonsuit was properly denied. The evidence for the State and the inferences therefrom were sufficient to take the case to the jury on the charged crimes. *State v. Bell,* 285 N.C. 746, 208 S.E. 2d 506 (1974); *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967); *State v. Marr,* 26 N.C. App. 286, 215 S.E. 2d 866 (1975).

The defendant also contends the trial court erred in refusing to hear any evidence of jury misconduct. Defendant's motion for appropriate relief was accompanied by affidavits of four of the jurors which stated that during deliberation they used information related to them by juror Raylas concerning the degree of lighting which he observed on a visit to the scene of the crime at 3:30 a.m., 15 September 1981.

N.C. Gen. Stat. 15A-1240(c) (1978) provides that:

"After the jury has dispersed, the testimony of a juror may be received to impeach the verdict of the jury on which he served . . . only when it concerns: (1) Matters not in evidence which came to the attention of one or more jurors under circumstances which would violate the defendant's constitutional right to confront the witness against him."

There was considerable testimony as to visibility during the commission of the offenses which occurred on 9 July 1981. Officer Douglass testified:

"As I have said, there is a clear shot from that corner to where I observed Mr. Hawkins. When I spotted Mr. Hawkins, he was walking away. At that point, I called out to him, when I first spotted him. I called for him to stop. I identified myself. What my exact words were, I do not know.

At this point, he began running. I did not lose sight of him during my chase, for a second, even as he passed trees or shrubs. I did not notice any other fleeing figures in the area. There is a clear scan of that area. The street light would illuminate any shadows or people. At this time, I did scan the area, but did not make an exhaustive search. I characterized it as a scan. It was a complete scan. It was easy to stand at the corner and look at the area.

I did not spot any person emerging from that hole in the back wall, either before or after my chase.

When I saw this figure inside the building, when I drove up, I had time to take at least a second to look at him. There was enough time to identify him."

The court entered the following order:

THIS CAUSE coming on for hearing before the undersigned Judge of the Superior Court on September 18, 1981, upon a Motion for appropriate relief filed 18 September, 1981, and the Court having examined the record and having heard the attorneys representing each side finds the facts as follows:

1. That the petitioner was convicted of felonious breaking and entering, possession of implements of housebreaking, and attempted safecracking on 15 September, 1981;

2. That the petitioner admitted at trial that he was at the scene of the crimes;

3. That the police testified as to the lighting conditions at the scene of the crimes;

4. That the scene of the crime is located at one of the most heavily travelled intersections in New Hanover County;

5. That the evidence against petitioner was overwhelming;

6. That no prejudice to the Defendant has been shown.

Based upon the foregoing, the Court finds and concludes as a matter of law as follows:

1. That no matter not in evidence came to the attention of one or more jurors under circumstances which would violate the defendant's constitutional right to confront the witnesses against him;

2. That none of the petitioner's constitutional rights have been violated.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the prayer of the petitioner be and the same is DENIED.

The findings of the court are amply supported by the evidence, and the affidavits of four jurors did not contain additional or different matters not in evidence at the trial.

We hold that the court correctly concluded that none of petitioner's constitutional rights were violated.

No error.

Judges HEDRICK and HILL concur.