## STATE v. NAMON CHURCH.

(Filed 3 November, 1965.)

**1. Criminal Law § 99—**

Upon motion for nonsuit, evidence offered by the State must be taken in the light most favorable to it, and conflicts therein must be resolved in the State's favor, the credibility and effect of the evidence being a question for the jury.

**2. Homicide § 20—**

Where the evidence tends to show that deceased was killed by a bullet fired from a pistol in the hand of the defendant, but the most incriminating evidence as to how the shooting occurred is testimony of a statement of defendant that it was an accident, *held*, the evidence is insufficient to overrule nonsuit in the absence of some showing from which culpable negligence might be found.

APPEAL by defendant from *Pless, J.,* May 1965 Session of CALDWELL.

The defendant was indicted for the murder in the first degree of Jessie Adkins Craig. He entered a plea of not guilty. He was found guilty of manslaughter and sentenced to a term of five to eight years in the State Prison. He assigns as error certain rulings as to the admission of evidence, portions of the charge to the jury and the denial of his motion for judgment of nonsuit at the close of the State's evidence. He offered no evidence.

The evidence for the State tends to show:

In the early morning of 8 November 1964, Jessie Adkins Craig died as a result of a bullet wound. The bullet entered the upper and inner quadrant of her right breast, went downward through the breast, reentered her body in the abdominal area and traveled on downward to the midline of the body and into the sacrum, from which it was removed in the course of an autopsy. It was fired from a position approximately 20 inches above and in front of the body, and from a .38 Colt revolver found by the sheriff in the glove compartment of an automobile driven by the defendant to the hospital within approximately ten minutes after the deceased was carried there in another car following the shooting. The pistol and the automobile were both owned by the defendant's father, Lonnie Church, at whose home the shooting occurred and who carried the deceased to the hospital. While at the hospital, the defendant told the deputy sheriff that the deceased was shot with a .38 pistol.

Swabbings of the hands of the defendant made shortly after the shooting, when chemically analyzed, disclosed that particles of a material contained in gunpowder were on the outside of his right hand, none being found on the inside of the right hand or on either

the inside or outside of his left hand. Similar swabbings of the hands of the deceased disclosed such particles upon the outside of her left hand and the inside of her right hand.

On the night of the shooting, one Judy Taylor, who was not called as a witness, made statements to the following effect to the deputy sheriff in the presence of the defendant, who made no response thereto:

On the night of the shooting she was visiting her sister, who lived with the deceased in a basement apartment in the home of Lonnie Church, the defendant's father. The group went out to dinner and returned to the Church home shortly after midnight. Thereupon she and her sister retired. The four year old son of the defendant occupied the same room with them. The defendant's father and, apparently, his teen-age brother also retired, leaving only the defendant and Jessie Adkins Craig still up in the house. Thirty minutes later Judy Taylor heard a shot. Immediately thereafter Jessie Adkins Craig cried out, "Oh, God," and the defendant called for his father to get up for they had to get the deceased to the hospital. Going out into the hallway, she observed the deceased lying in the hall in front of the doorway leading down to the basement apartment and the defendant and his father standing over her. As she approached them, the defendant said: "It was an accident. I didn't mean to." The defendant and his father then carried the deceased out to a car. Her sister and the defendant's teen-age brother also left, she remaining in the Church home to look after the four year old child of the defendant.

Following these statements by Judy Taylor, the deputy sheriff talked with the defendant who stated, in effect:

On the night of the shooting, the deceased, who was his girl friend, Judy Taylor, her sister, and the defendant's son went out to dinner. After eating they all returned to his father's home. He and the deceased again went out and returned after approximately 15 minutes. The deceased went to her apartment in the basement, he remaining upstairs. A few minutes later he heard the deceased scream. He went into the hall and to the door leading to the basement apartment, found the deceased partially up the steps, went down and assisted her up into the hall where she collapsed. He called his father and they carried her out to his car in which his father took her to the hospital, he following shortly in his father's car.

*Attorney General Bruton and Deputy Attorney General McGalliard for the State.*

*Patton, Ervin & Starnes for defendant appellant.*

PER CURIAM. Upon a motion for judgment of nonsuit the evidence offered by the State must be taken in the light most favorable to the State and conflicts therein must be resolved in the State's favor, the credibility and effect of such evidence being a question for the jury. *State v. Thompson,* 256 N.C. 593, 124 S.E. 2d 728; *State v. Roop,* 255 N.C. 607, 122 S.E. 2d 363; *State v. Bass,* 255 N.C. 42, 52, 120 S.E. 2d 580.

No occupant of the house at the time of the shooting testified. There is no evidence of ill will or of a quarrel between the defendant and the deceased. There is no evidence that he intended to shoot her. There is no evidence of any reason or motive, real or supposed, which he may have had for doing so.

The only evidence as to how the shooting occurred is contained in two conflicting statements said to have been made by the defendant. Judy Taylor stated to the sheriff that the defendant, standing over the body of the deceased, said, "It was an accident. I didn't mean to." The defendant's own statement to the sheriff indicates that the shooting occurred while the deceased was not in his presence. Although there is a conflict between these two statements, each of them tends to exculpate the defendant.

Taking the evidence in the light most favorable to the State, it would justify the jury in finding that the deceased was killed by a bullet accidentally fired from a pistol in the hand of the defendant and approximately 20 inches from and above the body of the deceased.

Culpable negligence, from which death proximately ensues, makes the actor guilty of manslaughter, or possibly murder. *State v. Roop, supra.* However, the statement by the defendant that he shot the deceased by accident is not evidence from which culpable negligence may be found in the absence of any other evidence as to how the shooting occurred. The defendant's motion for judgment as of nonsuit should therefore have been granted.

Reversed.