STATE OF NORTH CAROLINA v. DIANNE EVERHART

No. 118

(Filed 31 January 1977)

1. Homicide § 6— involuntary manslaughter — definition

Involuntary manslaughter is the unlawful and unintentional kill-ing of another human being without malice and which proximately results from the commission of an unlawful act not amounting to a felony or not naturally dangerous to human life, or from the commis-sion of some act done in an unlawful or culpably negligent manner, or from the culpable omission to perform some legal duty.

2. Homicide § 6— manslaughter — negligence required

For negligence to constitute the basis for the imposition of crimi-nal sanctions, it must be such reckless or careless behavior that the act imports a thoughtless disregard of the consequences of the act or the act shows a heedless indifference to the rights and safety of others.

3. Homicide § 21— manslaughter of baby — insufficiency of evidence

Evidence in a prosecution for manslaughter was insufficient to show that defendant acted in such a manner as to import a thought-less disregard of the consequences of her act or heedless indifference to the rights and safety of her baby where the evidence tended to show that defendant was a young girl with an I.Q. of 72; she gave birth to a baby unassisted while lying on the floor and dropped the newborn infant while attempting to place him upon the bed; thinking the baby was dead, she wrapped him in a blanket; at the time, de-fendant was ill and scared; a doctor who performed an autopsy on the body found no evidence of trauma or a purposeful act upon the body of the baby; and the doctor concluded that the child was acci-dentally smothered or died of neonatal respiratory failure—the failure to have proper stimulation to cause continued breathing.

ON petition by defendant for discretionary review of the decision of the Court of Appeals, a decision reported without published opinion at 30 N.C. App. 260, which affirmed the judgment entered by *Kivett, J.,* at the 22 September 1975 Ses-sion of ROWAN Superior Court.

Defendant was tried upon an indictment for manslaughter and convicted of involuntary manslaughter. She was sentenced to imprisonment for a maximum term of forty-two months.

The State introduced evidence tending to show that on the morning of 18 February 1975, defendant gave birth to a male infant. After delivering the baby without any assistance while

lying on the floor of her bedroom, defendant dropped the infant when she attempted to lift him from the floor to the bed. At this point, defendant thought the infant was dead because he was not crying. She then wrapped the baby in a blanket covering his head. Later, defendant went to the hospital for treatment and denied that she had given birth to a child. Subsequently, she recanted this denial and related the facts stated above to police officers. The officers found the infant, wrapped in a blanket, in defendant's bedroom.

The State offered the testimony of the physician who performed the autopsy. The physician stated that the baby was alive at the time of birth. However, he was not able to find any evidence of a purposeful act, such as a blow to the child's body or smothering by placing one's hand over the child's mouth. The physician concluded that the infant died of suffocation, either caused by being accidentally smothered by the blanket covering his head, or by the lack of outside assistance in enabling him to continue breathing after his first breath was taken.

Defendant testified in her own behalf. She stated that although she had given birth to a child previously, she did not know that she was pregnant on this occasion. She then related facts surrounding the delivery of the baby which were substantially the same as those testified to by the State's witnesses. Defendant offered the testimony of several other witnesses which tended to show that she had an I.Q. below normal; that she had engaged in track and field activities prior to the birth of the baby; and that her track coach did not know she was pregnant.

Other facts necessary to the decision of this case will be discussed in the opinion.

*Attorney General Rufus L. Edmisten and Associate Attorney Norma S. Harrell for the State.*

*Robert M. Davis for defendant appellant.*

MOORE, Justice.

Defendant assigns as error the overruling of her motion to dismiss at the close of all the evidence. As used in G.S. 15-173, there is no difference in legal significance between a "motion to dismiss" and a motion "for judgment as in case of nonsuit." *See State v. Cooper*, 275 N.C. 283, 167 S.E. 2d 266 (1969). The

rule to be applied when considering whether the State has introduced sufficient evidence to withstand a motion for nonsuit is well settled in this jurisdiction. A motion for nonsuit is properly denied when there is any evidence, whether introduced by the State or defendant, which will support the charges contained in the bill of indictment or warrant, considering the evidence in the light most favorable to the State and drawing every reasonable inference, deducible from the evidence, in favor of the State. *See State v. Sauls,* 291 N.C. 253, 230 S.E. 2d 390 (1976); *State v. Bell,* 285 N.C. 746, 208 S.E. 2d 506 (1974); 4 Strong, N. C. Index 3d, Criminal Law §§ 104, 106 (1976), and the plethora of cases cited therein.

[1]   Defendant was convicted of involuntary manslaughter. Involuntary manslaughter has been defined as the unlawful and unintentional killing of another human being without malice and which proximately results from the commission of an unlawful act not amounting to a felony or not naturally dangerous to human life, or from the commission of some act done in an unlawful or culpably negligent manner, or from the culpable omission to perform some legal duty. *State v. Rummage,* 280 N.C. 51, 185 S.E. 2d 221 (1971); *State v. Massey,* 271 N.C. 555, 157 S.E. 2d 150 (1967); *State v. Neal,* 248 N.C. 544, 103 S.E. 2d 722 (1958); *State v. Hovis,* 233 N.C. 359, 64 S.E. 2d 564 (1951). *See also* 4 Strong, N. C. Index 2d, Homicide § 6 (1968).

[2]   In instant case, the State had the burden of proving that defendant killed her child by an act done in a culpably negligent manner. Culpable negligence in the criminal law requires more than the negligence necessary to sustain a recovery in tort. Rather, for negligence to constitute the basis for the imposition of criminal sanctions, it must be such reckless or careless behavior that the act imports a thoughtless disregard of the consequences of the act or the act shows a heedless indifference to the rights and safety of others. As is stated in 1 Wharton, Criminal Law and Procedure, § 291 at 613 (1957), "There must be negligence of a gross and flagrant character, evincing reckless disregard of human life. . . . "

Defendant contends that the baby's death was caused at most by an unavoidable accident, and that she is not guilty of any culpable negligence. Defendant's assertion of accidental killing is not an affirmative defense and in a prosecution for

an unlawful homicide the burden is always upon the State to prove an unlawful slaying. *State v. Moore,* 275 N.C. 198, 166 S.E. 2d 652 (1969) ; *State v. Griffin,* 273 N.C. 333, 159 S.E. 2d 889 (1968).

> " 'Where the death of a human being is the result of accident or misadventure, in the true meaning of the term, no criminal responsibility attaches to the act of the slayer. Where it appears that a killing was unintentional, that the perpetrator acted with no wrongful purpose in doing the homicidal act, that it was done while he was engaged in a lawful enterprise, and that it was not the result of negligence, the homicide will be excused on the score of accident.' 26 Am. Jur., Homicide, s. 220, p. 305. The negligence referred to in the foregoing rule of law has been declared by this Court to mean something more than actionable negligence in the law of torts. It imports wantonness, recklessness or other conduct, amounting to culpable negligence. [Citations omitted.]" *State v. Faust,* 254 N.C. 101, 112-13, 118 S.E. 2d 769, 776 (1961). *See also State v. Phillips,* 264 N.C. 508, 142 S.E. 2d 337 (1965).

For example, in *State v. Church,* 265 N.C. 534, 144 S.E. 2d 624 (1965), defendant was convicted of involuntary manslaughter on evidence tending to show that decedent had been shot and killed by defendant. It was shown that decedent and defendant were good friends and there was no ill will between the two. The only evidence introduced at trial regarding how the shooting occurred was defendant's exclamation, "It was an accident. I didn't mean to." This Court reversed defendant's conviction, holding that the evidence showed only that the shooting had occurred by accident. The statement by defendant that the shooting occurred by accident was not, standing alone, sufficient evidence to support a finding of culpable negligence.

At trial in the present case, Dr. William Warga, the physician who performed the autopsy, read from his report as follows :

> "The findings of this autopsy were those of acute congestion with subpleural petechial hemorrhages, and a hematoma of the scalp. The fact that the lungs were ex-

panded showed that this child breathed after delivery, and therefore was a live birth. There was no evidence on autopsy findings of trauma or a purposeful act. The subpleural petechial hemorrhage and generalized congestion suggest anoxia. The hematoma of the scalp probably represented a birth injury, since no abrasion of the skin overlying this could be definitely identified.

"The patient stated that since the baby did not move, she thought it was dead and wrapped it up in clothing and placed it on the bed. Having found no purposeful act to explain this death, I am left with the conclusion that this child was accidentally smothered or died of neonatal respiratory failure. From the history given in this particular case, the mother stated that she believed the child was dead before she wrapped it up in clothing and placed it on the bed. The possibility of neglect cannot be determined by the findings of the autopsy or the history that I was given."

Dr. Warga further testified:

"There was no evidence of wilful trauma.

*          *          *

"After going through all the matters which I did, I was left with the conclusion that the child was accidently [sic] smothered or died of neonatal respiratory failure. The neonatal respiratory failure is the child not breathing anymore without some help. This determination was arrived at after I had made an examination and tests over a period of perhaps days or a month."

[3] In instant case, the evidence shows that defendant was a young girl, with an I.Q. of 72. She gave birth to the baby while lying on the floor and dropped the newborn infant while attempting to place him upon the bed. Thinking the baby was dead, she wrapped him in a blanket. At this time, the defendant had just delivered a baby without any assistance; was ill; and was scared. The doctor found no evidence of trauma or a purposeful act upon the body of the baby. He concluded that the child was accidentally smothered or died of neonatal respiratory failure—the failure to have proper stimulation to cause contin-

ued breathing. Under these facts there was not sufficient evidence to show that defendant acted in such a manner as to import a thoughtless disregard of the consequences of her act or heedless indifference to the rights and safety of the baby.

We hold, therefore, that the trial court erred when it denied defendant's motion to dismiss. *State v. Massey, supra; State v. Hancock,* 248 N.C. 432, 103 S.E. 2d 491 (1958).

The decision of the Court of Appeals affirming the judgment of the superior court is reversed. The Court of Appeals will remand the cause to the Superior Court of Rowan County with instructions that it reverse the judgment denying defendant's motion to dismiss.

Reversed.