STATE OF NORTH CAROLINA v. STANLEY RICHARDO MENDEZ

No. 793SC204

(Filed 3 July 1979)

1. Criminal Law § 89.10— witness's prior criminal activity—cross-examination proper

   The district attorney could properly cross-examine one of defendant's witnesses concerning his prior criminal activity for the purpose of impeaching or discrediting the witness.

2. Criminal Law § 102.4— prosecutor's intent to have witness indicted—defendant not prejudiced

   Defendant was not prejudiced by the alleged statement of the prosecutor that he intended to have one of defendant's witnesses indicted where the record on appeal indicated that defendant had completed his direct examination of the witness prior to the prosecutor's alleged statement, and the statement therefore apparently had no effect upon the witness's testimony and tended in no way to detract from defendant's right to a fair trial.

3. Criminal Law § 99.7— court's advice to witness not to testify—impropriety—no prejudice

   Though it is not improper for a trial court on its own motion to inform a witness of his rights, it was improper for the court in this case to advise the witness not to testify, but defendant was not prejudiced since the court's advice was given after the witness had completed his testimony for defendant on direct examination.

4. Criminal Law § 105.1— motion for nonsuit—waiver by introduction of evidence

   When the defendant offers evidence, he waives his motion for dismissal or judgment as in the case of nonsuit made, either actually or by statute, at the close of the State's evidence and only his motion made at the close of all of the evidence is considered on appeal.

5. Narcotics § 4— sale of LSD—defendant's belief that drug was mescaline—sufficiency of evidence of possession and sale

   In a prosecution for possession with intent to sell and sale of LSD, defendant was not entitled to have the case dismissed at the close of all the evidence even if he did think that the LSD which he possessed and sold was mescaline, since, in order to sustain a conviction for a violation of G.S. 90-95, it is not required that the State offer evidence tending to show that defendant knew the scientific name or the actual chemical composition of the controlled substance, and the evidence in this case tended to show at least that defendant knew or should have known that the controlled substance with which he was dealing was a Schedule I controlled substance.

APPEAL by defendant from *Reid, Judge*. Judgment entered 1 November 1978 in Superior Court, PITT County. Heard in the Court of Appeals 23 May 1979.

The defendant was charged with possession of the controlled substance lysergic acid diethylamide with the intent to sell and deliver and with the sale and delivery of that controlled substance. Upon his pleas of not guilty the jury returned a verdict finding the defendant guilty of both charges. From judgment sentencing him to imprisonment for a term of four years with that sentence suspended for a period of three years upon certain conditions, the defendant appealed.

The State's evidence tended to show that on 27 April 1978, Irvin Lee Alcox, a special agent with the North Carolina State Bureau of Investigation, and David Smith went to Room 345 of Slay Dormitory on the campus of East Carolina University. When they arrived, they expected to find George Mitchell Duke, Jr., the person to whom the room had been assigned. Instead the only person in the room was the defendant, Stanley Richardo Mendez. Mendez told them at that time that Duke was out "turning a deal." Smith then told Mendez that he and Duke had had a conversation earlier and that Duke had agreed to sell Smith a quarter of an ounce of chocolate mescaline for $350. Mendez responded "Okay" and then walked to a small stool in the corner of the room. Underneath the stool there was a small pouch from which Mendez produced a plastic bag containing a chocolate powder. Mendez handed the bag to Smith who handed it to Alcox. After weighing the contents of the bag, Alcox asked Mendez how much the quarter of an ounce of chocolate mescaline cost. Mendez replied that the price was $350. Alcox then handed $350 in cash to Mendez. Alcox later had the chocolate substance chemically analyzed and it was found to contain lysergic acid diethylamide or LSD.

During his testimony, Alcox indicated without objection that chocolate mescaline is known by "street people" as a form of LSD. It is made by grinding up LSD tablets and mixing them with a chocolate powder. It is sold under the name chocolate mescaline because some people will not buy the drug if it is represented to them as LSD.

The defendant Mendez offered evidence tending to show that he was visiting in Duke's room when Duke received a telephone call. Duke then told Mendez that he had to leave to pick up his girl friend but that Mendez could stay in the room and listen to the stereo while he was gone. About ten minutes after Duke left, Smith and Alcox came to Duke's room. They asked Mendez where Duke was, and Mendez told them that Duke had gone out but would return in a few minutes. Smith then told Mendez that he had previously arranged to purchase some chocolate mescaline from Duke. Smith stated that he knew where Duke kept the drug and asked Mendez to get it for them because they were in a hurry. At first Mendez refused. Smith persisted, however, and Mendez looked into the place where he was told the drug would be and found a plastic bag containing the chocolate powder described by Smith and Alcox. Mendez gave Smith the bag in exchange for $350. Mendez then left the money given him by Smith in the place where he had found the plastic bag.

Additional facts pertinent to this appeal are hereinafter set forth.

*Attorney General Edmisten, by Associate Attorney Norma S. Harrell, for the State.*

*James, Hite, Cavendish & Blount, by Robert D. Rouse III, for defendant appellant.*

MITCHELL, Judge.

[1] The defendant assigns as error the action of the trial court in allowing the District Attorney to ask one of the defendant's witnesses several questions concerning that witness' prior criminal activity. During cross-examination, the District Attorney asked the defendant's witness George Mitchell Duke, Jr. questions concerning his past involvement in various drug related activities. Although the defendant contends that the District Attorney's cross-examination constituted prejudicial error, we do not agree.

It is permissible to impeach or discredit a witness on cross-examination by asking him "all sorts of disparaging questions and he may be particularly asked whether he has committed specific criminal acts or has been guilty of specified reprehensible or

degrading conduct." *State v. Waddell*, 289 N.C. 19, 26, 220 S.E. 2d 293, 298 (1975) (citations omitted), *death sentence vacated*, 428 U.S. 904, 49 L.Ed. 2d 1210, 96 S.Ct. 3211 (1976). The scope of such cross-examination rests largely within the trial court's discretion and the scope of the cross-examination permitted by the trial court is not ground for reversal unless the cross-examination is shown to have improperly influenced the verdict. *State v. Carver*, 286 N.C. 179, 209 S.E. 2d 785 (1974). We find that the scope of cross-examination in the present case could not have had an improper influence on the jury and the defendant's assignment of error is overruled.

[2] The defendant next assigns as error the failure of the trial court to strike the entire testimony of the witness George Mitchell Duke, Jr. During redirect examination of the defendant's witness George Mitchell Duke, Jr., the following exchange occurred:

Q. And would you state whether or not it is true that while you were talking to [your lawyer] on the phone and in my presence [the Assistant District Attorney] threatened to have you indicted and placed in jail?

A. Yes. I heard him talking to my lawyer on the telephone.

Q. He said he was going to have you locked up?

A No. He did not say that.

Q. He said he was going to have you indicted?

A. Yes.

Q. For drugs?

A. Yes.

Q. Did that scare you?

A. Yes.

At no time after the foregoing testimony was introduced or at any other time did the defendant move to strike the testimony of the witness Duke. Nonetheless, we shall review the defendant's assignment of error.

Nothing in the record on appeal indicates that the alleged stated intent of the prosecutor to have the defendant's witness

Duke indicted was in any way made dependent upon Duke's decision concerning whether he would testify or the content of his testimony. To the contrary, the record clearly indicates that the prosecutor stated his intent to have the witness indicted in any event. Therefore, the statements of the prosecutor cannot be said to have been coercive or threatening.

More importantly, the record on appeal indicates that the defendant had completed his direct examination of Duke prior to the alleged statement of the prosecutor concerning his intent to have Duke indicted. Therefore, the defendant's evidence does not tend to show that the alleged statement of the prosecutor had any effect upon the witness' testimony or tended in any way to detract from the defendant's right to a fair trial. Having chosen to call Duke as a witness in his behalf, the defendant was not entitled to have Duke's testimony stricken in its entirety when it later became apparent that his credibility had been damaged by cross-examination. This assignment of error is overruled.

[3] We additionally note that the witness Duke asserted his right against self-incrimination provided by the Fifth Amendment to the Constitution of the United States when asked certain questions by the State during cross-examination. This occurred after the trial court made the following statement to the witness:

> The Court: Let me just say this to you, and I can't advise you because I cannot practice law. But if you have told me that you recognized the fact that you have not been charged or have not pled guilty to any criminal offense growing out of the specific contraband which is the subject matter of this case, then my advice would be to interpose your objection on any question in this regard because it would tend to incriminate you. If you follow what I am saying.
>
> A. In other words, not testify?
>
> The Court: This is what I would suggest to you if I were your lawyer, which I cannot do. Do you understand what I am telling you?
>
> A. Yes.

It is, of course, not improper for a trial court on its own motion to inform a witness of his rights. We do not approve, how-

ever, the action of the trial court in going beyond that point and advising a witness with regard to whether and how he should testify. In the present case, the action of the trial court was harmless to the defendant beyond a reasonable doubt as the witness had completed his testimony for the defendant upon direct examination. Such may not always be the case, however, and trial courts in such situations should avoid conveying any opinion to a witness concerning whether or how he should testify.

The defendant also assigns as error the failure of the trial court to grant his motion to dismiss made at the close of the State's evidence. At the time he made his motion, the defendant did not indicate whether he was making the motion pursuant to G.S. 15-173 or G.S. 15A-1227. Both of those statutes allow motions to dismiss to be made at the close of the State's evidence. However, they are not identical. G.S. 15-173 provides that "If the defendant introduces evidence, he thereby waives any motion for dismissal or judgment as in case of nonsuit which he may have made prior to the introduction of his evidence and cannot urge such prior motion as ground for appeal." Although no such provision is contained in G.S. 15A-1227, its enactment did not create a new type of motion to challenge the sufficiency of the evidence.

A challenge to the sufficiency of the evidence to sustain a conviction is still properly made by either a motion for dismissal or a motion for judgment as in the case of nonsuit. *State v. Smith,* 40 N.C. App. 72, 252 S.E. 2d 535 (1979). Both motions were known to the law for many years prior to the enactment of G.S. 15A-1227. The motion for dismissal referred to in G.S. 15A-1227 is the same motion for dismissal referred to in G.S. 15-173. Therefore, there is but one motion for dismissal for insufficiency of the evidence to sustain a conviction, and that motion is governed by the provisions of both G.S. 15-173 and G.S. 15A-1227.

[4] When the provisions of G.S. 15-173 are applied to the defendant's motion to dismiss, it is clear that by presenting evidence he waived his right to assert the denial of his motion to dismiss at the close of the State's evidence as a ground for appeal. The provisions of G.S. 15A-1227(d) and G.S. 15A-1446(d)(5), allowing review on appeal of the sufficiency of the State's evidence in a criminal case without regard to whether the appropriate motion has been made, do not change the foregoing rule. *See State v. Paschall,* 14

N.C. App.. 591, 188 S.E. 2d 521 (1972) (applying former G.S. 15-173.1). When the defendant offers evidence, he waives his motion for dismissal or judgment as in the case of nonsuit made, either actually or by statute, at the close of the State's evidence and only his motion made at the close of all of the evidence is considered on appeal. As the defendant presented evidence, he may not properly bring forward an assignment of error based upon the denial of his motion to dismiss at the close of the State's evidence. This assignment of error is dismissed.

[5] The defendant also assigns as error the trial court's failure to grant his motion to dismiss at the close of all of the evidence. The defendant contends that the motion should have been granted because, among other things, the State failed to offer evidence tending to show that the defendant knowingly possessed lysergic acid diethylamide. We do not agree.

By its terms, G.S. 90-95(a)(1) makes it unlawful to sell or deliver a controlled substance and to possess a controlled substance with intent to sell or deliver that substance. Such acts must be committed knowingly in order to be criminal. Therefore, if a person knowingly sells or delivers a controlled substance and knowingly possesses a controlled substance with the intent to sell or deliver that substance, he is guilty of those crimes.

The defendant contends that the State's evidence tends to show that the controlled substance which he possessed and sold was at all times represented as "chocolate mescaline" and that he did not know that the substance in fact contained lysergic acid diethylamide. The State offered evidence tending to show that the term "chocolate mescaline" is a term used by those familiar with controlled substances to identify lysergic acid diethylamide mixed into a chocolate powder base and that this was the type of mixture possessed and sold by the defendant in connection with the charges brought against him.

Even if we assume *arguendo* that the State's evidence tended to show that the defendant possessed and sold lysergic acid diethylamide which he thought to be mescaline, the defendant will not prevail with regard to this assignment. In order to sustain a conviction for a violation of G.S. 90-95, it is not required that the State offer evidence tending to show that the defendant knew the scientific name or the actual chemical composition of the

controlled substance. The uncontested evidence tends to show that during the transaction with regard to the controlled substance involved in the present case, it was at all times referred to as "chocolate mescaline." Mescaline is a Schedule I controlled substance. G.S. 90-89(c)(10). Therefore, the evidence tends to show at least that the defendant knew or should have known that the controlled substance with which he was dealing with a Schedule I controlled substance. He would not be exonerated by virtue of a mistaken belief on his part that he was selling mescaline when, in fact, he was selling another Schedule I controlled substance, lysergic acid diethylamide. As the evidence tends to support a reasonable inference that the defendant knowingly sold and delivered a Schedule I controlled substance and knowingly possessed a Schedule I controlled substance with the intent to sell and deliver that substance, the trial court properly overruled the defendant's motion to dismiss. *People v. Bolden*, 62 Ill. App. 3d 1009, 379 N.E. 2d 912 (1978); *People v. James*, 38 Ill. App. 3d 594, 348 N.E. 2d 295 (1976); *Herrera v. State*, 561 S.W. 2d 175 (Tex. Cr. App. 1978).

The defendant has presented additional assignments of error which we have reviewed and find to be without merit. The defendant received a fair trial free from prejudicial error, and we find

No error.

Judges PARKER and MARTIN (Harry C.) concur.