STATE OF NORTH CAROLINA v. R. B. BOYD

No. 8226SC799

(Filed 15 March 1983)

1. **Criminal Law § 105.1— failure to renew motion to dismiss at close of all evidence**

Where defendant assigned as error the denial of his motion to dismiss at the close of the State's evidence but where defendant did not make a similar motion at the close of all the evidence, he waived his right to assert the denial as error on appeal. However, pursuant to G.S. 15A-1227(d) and G.S. 15A-1446(d)(5) the Court could consider the sufficiency of all the evidence.

2. **Homicide § 21.9— involuntary manslaughter—sufficiency of evidence**

The evidence was sufficient to be submitted to the jury on the charge of involuntary manslaughter where there was evidence that defendant voluntarily drew his gun while involved in an argument.

APPEAL by defendant from *Ferrell, Judge.* Judgment entered 11 March 1982 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 8 February 1983.

The defendant was indicted by a grand jury for the second degree murder of Loretta Stevens. He pled not guilty and was tried by a jury.

Two men who were present at the scene of the shooting testified for the State. Jesse Stowe said that he was at a house on Kenthill Drive in Charlotte at about one p.m. on 16 June 1981. He talked with Stevens and Terry Lee Davis for awhile. Stevens then went into the kitchen.

Although Stowe could not see the defendant or Stevens, he did hear conversation from the kitchen. Stowe heard one shot and the defendant calling for help.

When Stowe went to the kitchen, he saw the defendant holding Stevens up to him. He described the defendant as hysterical. The defendant put Stevens in his car to take her to the hospital although Stowe said that he would call an ambulance.

Davis testified that he was at the house on the day of the shooting. Although he could not see what was happening in the kitchen, Davis said he heard the defendant holler "Oh God" and "I didn't mean to do it." Davis ran into the room and saw the defendant holding Stevens.

After Davis and the defendant put Stevens in the defendant's car, defendant drove toward the hospital. When Stevens fell off the seat onto the floor, the defendant stopped to put her back on it. Davis got out of the car and went back to the scene of the shooting. The defendant drove to the hospital.

Robert Mattice, an officer with the Charlotte Police Department, went to the hospital about three p.m. on the day of the shooting to talk with the defendant. The defendant told Mattice that Stevens had been cleaning the gun. She was smiling and laughing and told him that she was going to kill him. When the defendant went outside, he heard a shot go off.

Three other police officers met the defendant and Mattice at the scene of the shooting. A search of the house revealed a blue steel handgun and some ammunition.

At the police station, the defendant told Officer Rick Sanders the same story that he had earlier told Mattice. Sanders told the defendant that he did not believe him and left the room.

When Sanders came back into the room, the defendant told him that he and Stevens had been arguing before the shooting. After she grabbed his gun and they struggled over it, the gun went off. Sanders told the defendant again that he did not believe him. The defendant then told a third story that Sanders wrote down and that the defendant signed.

In the written statement, the defendant stated that while arguing with Stevens, he pulled out his gun from his pants and heard shots. The defendant went outside and when he came back in, he realized that he had shot Stevens. He then took Stevens to the hospital. The statement concluded "I shot Loretta but I didn't mean to kill her. If I was going to kill her, I wouldn't have tried to help her."

The doctor who performed an autopsy on Stevens testified that the cause of her death was a gunshot wound to the chest.

Three witnesses testified for the defense. James Burroughs, the defendant's uncle, stated that he was in the backyard behind the house at the time of the shooting. He did not see the defendant walk out of the house and back inside after the shot.

Davis was also called as a witness for the defendant. He identified a written statement that he gave to the police on the day of the shooting. The statement corroborated what Davis said in his testimony for the State. It added that after Davis heard the shot, he heard the defendant say "I didn't mean it. She hit my arm." When Davis was helping put Stevens in the car, he heard defendant say, "I didn't mean to shoot her. She hit my arm."

The defendant testified that on the day of the shooting, Stevens was angry with him because he would not take her to her mother's house at that time. When he started to walk away, Stevens grabbed his gun out of his side holster. The gun went off as they struggled over it.

The defendant denied that the statement read by Sanders to the jury was an accurate reflection of what he said. He testified that he signed the statement because he was scared and because

Sanders told him that he would get him a lawyer and get him out of jail on bond.

The defendant identified the gun that the State introduced into evidence as one that he gave Stevens to protect herself. He said the gun that Stevens was shot with was a different gun than the one that had been presented at trial.

Four possible verdicts were submitted to the jury: second degree murder, voluntary manslaughter, involuntary manslaughter, and not guilty. The jury found the defendant guilty of involuntary manslaughter. He was given the maximum sentence of ten years and ordered to pay restitution to Stevens' estate of $3,500 as a condition of obtaining work release or parole. From this judgment, the defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Wilson Hayman, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Nora B. Henry, for the defendant.*

ARNOLD, Judge.

The defendant's first assignment of error is the denial of his motion to dismiss at the close of the State's evidence. He did not make a similar motion at the close of all the evidence.

[1] In *State v. Mendez,* 42 N.C. App. 141, 256 S.E. 2d 405 (1979), the court held that presentation of evidence by a defendant following denial of this motion and failure to renew the motion at the close of all the evidence is a waiver of the right to assert the denial as error on appeal. But we will consider the sufficiency of all the evidence here, pursuant to G.S. 15A-1227(d) and G.S. 15A-1446(d)(5), as the court did in *State v. Alston,* 44 N.C. App. 72, 259 S.E. 2d 767 (1979), *cert. denied,* 304 N.C. 589, 290 S.E. 2d 709 (1981).

[2] In judging the sufficiency of the evidence in a criminal case, we are guided by the words of the United States Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, *reh'g denied,* 444 U.S. 890 (1979). The test is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." 443 U.S. at 319 (emphasis in original). *See also State v. Locklear,* 304 N.C. 534, 537-38, 284 S.E. 2d 500, 502 (1981).

Involuntary manslaughter is defined in North Carolina as "the unintentional killing of a human being without malice, proximately caused by (1) an unlawful act not amounting to a felony nor naturally dangerous to human life, or (2) a culpably negligent act or omission." *State v. Redfern,* 291 N.C. 319, 321, 230 S.E. 2d 152, 153 (1976).

Because involuntary manslaughter is a felony, G.S. 14-18, and part (1) of the *Redfern* definition of the crime is not applicable to the facts before us, this case turns on if the facts show "a culpably negligent act or omission" by the defendant.

It is a well-accepted tenet of our jurisprudence that "[o]ne who handles a firearm in a reckless or wanton manner and thereby unintentionally causes the death of another is guilty of involuntary manslaughter." *State v. Moore,* 275 N.C. 198, 212, 166 S.E. 2d 652, 662 (1969); *accord, State v. Brooks,* 260 N.C. 186, 132 S.E. 2d 354 (1963); *State v. Foust,* 258 N.C. 453, 128 S.E. 2d 889 (1963).

What is culpable negligence was defined in *State v. Everhart,* 291 N.C. 700, 231 S.E. 2d 604 (1977).

> Culpable negligence in the criminal law requires more than the negligence necessary to sustain a recovery in tort. Rather, for negligence to constitute the basis for the imposition of criminal sanctions, it must be such reckless or careless behavior that the act imports a thoughtless disregard of the consequences of the act or the act shows a heedless indifference to the rights and safety of others.

291 N.C. at 702, 231 S.E. 2d at 606.

The evidence here, when considered in the light most favorable to the prosecution, shows that the defendant acted with the requisite culpable negligence. His signed statement contains facts that could be seen by a rational jury as sufficient to meet the elements of the crime.

> Me and Loretta Stevens were arguing. I had got real mad at Loretta, and I had my gun on my side in my pants. The next

thing I knew, I had the gun out. I was real mad and heard the shots. I went outside and came back inside. I then realized I had shot Loretta.

Both of the cases cited by the defendant in support of his argument that the shooting was an accident can be distinguished from this case on the facts. In *State v. Honeycutt*, 250 N.C. 229, 108 S.E. 2d 485 (1959), the defendant's gun discharged after it hit a porch post. The defendant there had been aiming at a tree.

The only evidence to implicate the defendant in *State v. Church*, 265 N.C. 534, 144 S.E. 2d 624 (1965), was his statement that "It was an accident. I didn't mean to." 265 N.C. at 536, 144 S.E. 2d at 625. Thus, the facts in both cases cited are weaker than those in the case *sub judice* where the defendant voluntarily drew his gun while involved in an argument. Although involuntary manslaughter does not concern intent to kill, it does connote an intentional act, like the defendant voluntarily drawing his gun. *State v. Wilkerson*, 295 N.C. 559, 582, 247 S.E. 2d 905, 918 (1978). *See also State v. Shepard*, 61 N.C. App. 159, 300 S.E. 2d 268 (1983) (upheld an involuntary manslaughter conviction because it found culpable negligence from facts similar to the ones in this case).

The other assignment of error by the defendant is that an instruction to the jury on involuntary manslaughter should not have been given because of the lack of evidence to support a verdict of guilty of that crime. Because involuntary manslaughter is a lesser included offense of the indicted crime of murder, *State v. Hudson*, 54 N.C. App. 437, 283 S.E. 2d 561 (1981), an instruction on its elements was proper only if there was evidence to support it. *See Redfern*, 291 N.C. at 321, 230 S.E. 2d at 153.

Our discussion above shows that we find sufficient evidence of involuntary manslaughter to warrant an instruction on it. Because it was proper to give a jury instruction on the elements of involuntary manslaughter and the evidence supports the conviction, we find

No error.

Judges HILL and WHICHARD concur.