IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-618

 No. COA 20-917

 Filed 16 November 2021

 Buncombe County, No. 15 CRS 484

 STATE OF NORTH CAROLINA

 v.

 JESSICA LEA METCALF, Defendant.

 Appeal by Defendant from judgment entered 23 August 2019 by Judge Marvin

 P. Pope, Jr., in Buncombe County Superior Court. Heard in the Court of Appeals 22

 September 2021.

 Attorney General Joshua H. Stein, by Assistant Attorney General Thomas H.
 Moore, for the State.

 Anne Bleyman for Defendant-Appellant.

 GRIFFIN, Judge.

¶1 Defendant Jessica Lea Metcalf appeals from a judgment entered upon a jury

 verdict finding her guilty of involuntary manslaughter of a three-year-old child,

 Archie.1 On appeal, Defendant contends that the trial court erred by (1) denying

 Defendant’s motion to strike the jury venire; (2) failing to grant Defendant’s motion

 1 We use a pseudonym to protect the anonymity of the child and for ease of reading.

 See N.C. R. App. P. 42.
 STATE V. METCALF

 2021-NCCOA-618

 Opinion of the Court

 to dismiss for insufficient evidence; and (3) failing to dismiss the indictment due to

 insufficient notice. Upon review, we hold that Defendant received a fair trial, free

 from error.

 I. Factual and Procedural History

¶2 In January 2015, Defendant cohabitated in a trailer home with her boyfriend,

 Brandon Rathbone, in Buncombe County. The trailer home had no running water

 because the well pump “froze and busted” in the cold. The trailer home also had no

 house telephone, and Defendant’s cell phone had minimal service. Defendant stated

 that an electric heater was used to heat the trailer when it was cold, and that the

 trailer’s wall would get hot when Defendant and Mr. Rathbone used the heater.

¶3 Archie was Mr. Rathbone’s nephew. On or around 20 January 2015, Archie

 came to stay with Mr. Rathbone and Defendant for several days while Archie’s

 mother was hospitalized to give birth to another child. Mr. Rathbone’s parents,

 Wanda and Stephen Neil, lived nearby. Typically, Mr. or Mrs. Neil would pick up

 Archie between 8:30 and 9:30 a.m. to care for Archie while Mr. Rathbone was at work.

 Defendant had taken time off of work to watch Archie when Mrs. Neil, Mr. Neil, and

 Mr. Rathbone were unwilling to do so.

¶4 At approximately 7:00 p.m. on 27 January 2015, Defendant took four tablets

 of Xanax, although Defendant stated she was only allowed to take “up to three

 [tablets] a day.” Defendant also stated she could not remember if she had gotten up
 STATE V. METCALF

 2021-NCCOA-618

 Opinion of the Court

 in the middle of the night to take more Xanax. Between 6:00 and 6:15 a.m. on the

 following morning, Mr. Rathbone left home for work like he did every day. After Mr.

 Rathbone left for work, Defendant heard Archie moving around, checked on him, and

 noticed Archie had wet the bed, so she changed his pants.

¶5 At approximately 7:00 a.m., Defendant turned on the heater in the living room.

 After watching television for some time, Defendant went to the bathroom and

 “smoked about a half of a cigarette.” Defendant stated that she would only smoke

 outside or in the bathroom. Upon returning to the living room, Defendant observed

 that sparks were coming from either the heater or the electric outlet and that the

 sparks were already burning holes in the couch cushions. The couch was already

 smoking from the sparks.

¶6 In an attempt to stop the burning, Defendant grabbed a blanket to smother the

 fire; however, the blanket caught fire and stuck to Defendant’s hands and burned her.

 Defendant stated that she did not immediately get Archie out of the trailer home

 because she believed that she could put out the fire. Defendant stated she went to

 the front door and yelled for help. Defendant then went to the kitchen to look for

 water to extinguish the fire, but there was no running water in the mobile home.

 Defendant stated that “usually they keep several gallons [of water] in the kitchen

 area, but they were empty.” After finding a bleach jug on the dryer, Defendant

 returned to the front door to call for help again. Mr. Rathbone stated there were two
 STATE V. METCALF

 2021-NCCOA-618

 Opinion of the Court

 fire extinguishers under the kitchen counter. Defendant “tried to use the fire

 extinguisher but it didn’t work [because] [s]he squeezed the trigger, but she didn’t

 pull the pin out.”

¶7 Defendant stated a neighbor, Tammy Peek, arrived at the burning structure

 and escorted Defendant down a hall and out of the back door of the trailer home. Ms.

 Peek claims this occurred around 8:20 a.m. Ms. Peek, however, stated that Defendant

 was already standing in the yard outside of the burning trailer home when Ms. Peek

 arrived at the scene, and that Ms. Peek never entered the trailer home. Furthermore,

 Defendant claimed that she repeatedly mentioned her purse and Archie to Ms. Peek

 as they exited the trailer home together, but Defendant could not remember if she

 was speaking out loud or only thinking about the purse and Archie in her head.

 Conversely, Ms. Peek stated that she asked Defendant if anyone else was in the home,

 and Defendant said no, that “her children . . . were with their father[.]” Ms. Peek

 stated Defendant was asked “numerous times . . . [on] [a]t least four or five” occasions

 if anyone was in the trailer, and that Defendant replied “there’s no one in the home.”

¶8 Defendant stated that she could have gotten Archie out of the trailer home

 when she exited, but Defendant did not get Archie out because “she thought she could

 put the fire out.”

¶9 Ms. Peek ran back to her house approximately 130 to 150 feet away from the

 burning trailer home, woke her sleeping boyfriend Billy Boyd, and called 911 with
 STATE V. METCALF

 2021-NCCOA-618

 Opinion of the Court

 her cell phone. After placing the 911 call, Ms. Peek and Mr. Boyd returned to the

 burning trailer home where Defendant remained standing in the front yard. Again,

 Ms. Peek and Mr. Boyd asked Defendant if there was anyone else in the home. Even

 after being asked “multiple times” if there was anyone in the house, “[Defendant]

 consistently told [Ms. Peek and Mr. Boyd] no.” Ms. Peek stated that Defendant asked

 for her cell phone and uniforms. Mr. Boyd observed that Defendant’s face looked as

 though something “blew up” on it. Defendant then asked for a cigarette and when

 Ms. Peek gave her one, Defendant put it in her mouth backward, with the “tobacco

 part in, [and was] going to light the filter.” Mr. Boyd then departed to inform Mr.

 Neil about the fire.

¶ 10 Mr. Neil and Mr. Boyd met outside the Neil home, and Mr. Boyd told Mr. Neil

 about the fire. Mrs. Neil informed Mr. Rathbone that his home was burning after

 Mr. Neil reported the incident. When Mr. Boyd asked Mr. Neil if there were any

 children in the trailer home, Mr. Neil answered that Archie was there. Mr. Neil then

 called 911 to inform emergency services that someone was inside the trailer home.

 Mr. Boyd and Mr. Neil departed the Neil home together to return to the burning

 trailer home. Mrs. Neil was unable to make it to the burning trailer home. Upon

 arriving at the trailer home, Mr. Neil asked Defendant where Archie was, and

 Defendant replied, “his daddy had him.”

¶ 11 Shortly after the initial dispatch call, 911 communications dispatched
 STATE V. METCALF

 2021-NCCOA-618

 Opinion of the Court

 firefighters from the Leceister Fire Department. Jeff Keever and Joshua Reeves were

 the initial firefighters on the scene. Keever stated he and Reeves were notified by

 dispatch while en route of a possible child entrapment in the trailer home. Keever

 estimated he arrived at the fire approximately three to four minutes after receiving

 the call. Upon arriving at the scene, Keever observed Defendant and Ms. Peek in the

 driveway, and the trailer presented “heavy smoke and heavy fire.” Although Keever’s

 focus upon arrival was on the entrapment, Keever asked for confirmation from

 Defendant. When asked if there was anybody still inside, Defendant stated that

 “[t]he kids are with their daddy.” In response, Keever erroneously “notified all

 dispatch that there was no confirmed entrapment.” Despite Defendant’s

 misinformation, Keever stated that with their next help “about 15 minutes away” and

 “with that much involvement and that much smoke . . . that there is a point of no

 return.” Clarifying, Keever stated that “there wouldn’t have been any life in

 there. . . . [W]e would have been risking our lives to go in there and try to save

 nothing.”

¶ 12 During this time, Reeves attempted to get control of the fire and was

 interrupted by Mr. Neil, whom Reeves had to wrestle off the porch of the trailer home.

 According to Reeves, Mr. Neil was adamant that Archie was in the home. Reeves also

 stated at that time, “[t]here was no hope of going inside” and that “[Reeves] wouldn’t

 have survived going into that room with [his] gear on much less letting [Mr. Neil] go
 STATE V. METCALF

 2021-NCCOA-618

 Opinion of the Court

 inside without it.” Christopher Brown, the Chief of Leicester Volunteer Fire

 Department, arrived and assumed command of the scene. Chief Brown reported that

 once the firefighting crews gained access to the structure, they located the deceased

 child on the bedroom floor of the trailer home.

¶ 13 Breena Williams, an arson investigator with the Asheville-Buncombe Arson

 Task Force at the time of the incident, obtained a search warrant for the trailer home

 and obtained approval to move Archie’s body. Williams later observed Dr. Jerri

 McLemore perform an autopsy of Archie’s body. Dr. McLemore observed extensive

 “thermal injuries or thermal changes of the outside of the body” and a carbon

 monoxide presence in Archie’s blood in excess of sixty percent. Dr. McLemore noted

 that “going over 50 percent” is “basically lethal.” Dr. McLemore then made a finding

 and diagnosis that the ultimate “cause of death was smoke and fume inhalation.”

¶ 14 During initial trial proceedings, the trial court judge inadvertently mentioned

 that Defendant’s attorneys were from the public defender’s office. The trial judge

 briefly stated on a single instance, “Ms. McLendon is with the public defender’s office

 also,” in front of the jury, but never again made reference to defense counsel’s office

 in front of the jury throughout the remaining proceedings. Defendant’s counsel

 requested the trial court strike the entire jury venire. The trial court denied the

 motion, unless the parties could show any type of appellate decision showing the

 identification of public defenders as reversible error. Defendant moved to dismiss the
 STATE V. METCALF

 2021-NCCOA-618

 Opinion of the Court

 charges against her for insufficient evidence at the close of the State’s evidence and

 again at the close of Defendant’s evidence. The trial court denied both motions.

¶ 15 The jury convicted Defendant on one count of involuntary manslaughter.

 Because the jury was unable to reach a verdict on Defendant’s child abuse charge,

 the trial court declared a mistrial as to that charge. Defendant orally provided notice

 of appeal in open court.

 II. Analysis

¶ 16 Defendant raises three issues on appeal. First, Defendant contends that the

 trial court erred in denying her motion to strike the jury venire, because it denied her

 right to a fair trial before an impartial jury. Second, Defendant argues that her

 involuntary manslaughter conviction must be vacated because the State did not meet

 its burden of proving that Defendant’s criminally negligent actions proximately

 caused Archie’s death. Third, Defendant asserts that the short-form indictment

 charging Defendant with involuntary manslaughter was fatally defective for lack of

 sufficient notice of involuntary manslaughter’s essential elements.

 A. Jury Venire

¶ 17 Defendant challenges the fairness of her trial due to the trial court denying

 Defendant’s motion to strike the jury venire after the trial judge inadvertently

 mentioned Defendant’s counsel was from the public defender’s office on a single

 occurrence prior to jury selection.
 STATE V. METCALF

 2021-NCCOA-618

 Opinion of the Court

¶ 18 “A remark by the court is not grounds for a new trial if, when considered in the

 light of the circumstances under which it was made, it could not have prejudiced [the]

 defendant’s case.” State v. King, 311 N.C. 603, 618, 320 S.E.2d 1, 11 (1984). The

 defendant “bears the burden of establishing that the trial judge’s remarks were

 prejudicial.” State v. Summerlin, 98 N.C. App. 167, 174, 390 S.E.2d 358, 361 (1990)

 (citing State v. Blackstock, 314 N.C. 232, 333 S.E.2d 245 (1985)). “[I]n a criminal case

 it is only when the jury may reasonably infer from the evidence before it that the trial

 judge’s action intimated an opinion as to a factual issue, the defendant’s guilt, the

 weight of the evidence or a witness’s credibility that prejudicial error results.” State

 v. Blackstock, 314 N.C. 232, 236, 333 S.E.2d 245, 248 (1985).

¶ 19 The single passing reference made under these facts does not warrant a new

 trial. The jury could not reasonably infer the trial court’s introduction of the parties

 to be an opinion on a factual issue in the case, Defendant’s guilt, nor the weight of

 the evidence or a witness’s credibility. See id. Defendant speculates that the status

 of a public defender may prejudice a defendant, citing only a single law review article

 to support this assumption. Regardless, it is apparent from the Record that the jury

 participated in reasoned decision-making based on the merits of the case, as the jury

 convicted Defendant of involuntary manslaughter but failed to convict on felonious

 negligent child abuse, prompting a mistrial as to the latter charge. Defendant’s

 challenge to the jury venire fails.
 STATE V. METCALF

 2021-NCCOA-618

 Opinion of the Court

 B. Sufficiency of the Evidence

¶ 20 Next, Defendant claims that the State failed to meet its burden of proof that a

 criminally negligent act by Defendant was the proximate cause of Archie’s death.

 Claiming the State “failed to meet its burden of proof” is synonymous with, and the

 foundation of, a motion to dismiss for insufficient evidence. N.C. Gen. Stat. § 15A-

 1227 (2019); State v. Scott, 356 N.C. 591, 594, 573 S.E.2d 866, 868 (2002) (stating that

 “the State has not met this burden” when announcing its holding under N.C. Gen.

 Stat. § 15A-1227). “Rule 10(a)(3) [of the North Carolina Rules of Appellate Procedure]

 provides that a defendant preserves all insufficiency of the evidence issues for

 appellate review simply by making a motion to dismiss the action at the proper time.”

 State v. Golder, 374 N.C. 238, 246, 839 S.E.2d 782, 788 (2020). A defendant may

 properly preserve all issues related to the sufficiency of the evidence for appellate

 review by making a proper motion to dismiss on those issues at the close of the State’s

 evidence, and by subsequently renewing the motion to dismiss at the close of all

 evidence in accordance with Rule 10(a)(3). N.C. R. App. P. 10(a)(3).

¶ 21 Here, Defendant properly preserved the issue by moving to dismiss at the close

 of the State’s evidence as well as the close of Defendant’s evidence in accordance with

 Rule10(a)(3). We review the denial of a motion to dismiss for insufficient evidence de

 novo. State v. Barnett, 368 N.C. 710, 713, 782 S.E.2d 885, 888 (2016).

¶ 22 “Upon [a] defendant’s motion for dismissal, the question for the Court is
 STATE V. METCALF

 2021-NCCOA-618

 Opinion of the Court

 whether there is substantial evidence (1) of each essential element of the offense

 charged, or of a lesser offense included therein, and (2) of [the] defendant[] being the

 perpetrator of such offense.” State v. Powell, 299 N.C. 95, 98, 261 S.E.2d 114, 117

 (1980). If substantial evidence exists for each essential element and as to the

 defendant’s identity as the perpetrator, “the motion [to dismiss] is properly denied.”

 Id. “‘[S]ubstantial evidence’ . . . mean[s] that the evidence must be existing and real,

 not just seeming or imaginary.” Id. at 99, 261 S.E.2d at 117. Put differently,

 “[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept

 as adequate to support a conclusion.” State v. Smith, 300 N.C. 71, 78, 265 S.E.2d 164,

 169 (1980).

¶ 23 When the trial court reviews a defendant’s motion to dismiss for lack of

 substantial evidence, the evidence must be viewed “in the light most favorable to the

 State,” giving the State the benefit of all reasonable inferences. State v. Hill, 365

 N.C. 273, 275, 715 S.E.2d 841, 843 (2011) (citation and internal quotation marks

 omitted). Contradictions or discrepancies in the evidence “are for the jury to

 resolve[.]” Id. “[T]he trial court is concerned only with sufficiency of the evidence to

 carry the case to the jury and not its weight.” State v. Crawford, 344 N.C. 65, 73, 472

 S.E.2d 920, 925 (1996). The “combination of direct and circumstantial evidence” may

 be used in reviewing a trial court’s assessment of sufficiency of the evidence to survive

 a defendant’s motion to dismiss. State v. Blagg, 377 N.C. 482, 490, 858 S.E.2d 268,
 STATE V. METCALF

 2021-NCCOA-618

 Opinion of the Court

 274 (2021).

¶ 24 Because Defendant does not contest her identity as the principal actor in the

 events leading up to Archie’s death, we do not review whether there is substantial

 evidence on the record as to Defendant’s identity. This Court’s inquiry now turns to

 the issue of whether there is “such relevant evidence [that] a reasonable mind might

 accept as adequate to support a conclusion” of guilt for each essential element of

 involuntary manslaughter. Smith, 300 N.C. at 78, 265 S.E.2d at 169. “The elements

 of involuntary manslaughter are: (1) an unintentional killing; (2) proximately caused

 by either (a) an unlawful act not amounting to a felony and not ordinarily dangerous

 to human life, or (b) culpable negligence.” State v. McGee, 234 N.C. App. 285, 289,

 758 S.E.2d 661, 664–65 (2014) (citation and internal quotation marks omitted).

 Culpably negligent acts and culpable omissions to perform a legal duty are both

 equally sufficient to satisfy the second element of proximate cause. State v. Everhart,

 291 N.C. 700, 702, 231 S.E.2d 604, 606 (1977). Defendant concedes Archie’s death

 was unintentional and “tragic,” but contests the sufficiency of the State’s evidence for

 element two. For the reasons discussed below, we hold that there is substantial

 evidence in the Record that Defendant’s culpably negligent acts and omissions

 proximately caused Archie’s unintentional death and that the evidence was sufficient

 to send the case to the jury. The trial court did not err when it denied Defendant’s

 motion to dismiss.
 STATE V. METCALF

 2021-NCCOA-618

 Opinion of the Court

 1. Substantial evidence exists to support a reasonable finding that Defendant’s
 acts and omissions were culpably negligent.

¶ 25 “[C]ulpable negligence . . . must be such reckless or careless behavior that the

 act imports a thoughtless disregard of the consequences of the act or the act shows a

 heedless indifference to the rights and safety of others.” State v. Debiase, 211 N.C.

 App. 497, 505, 711 S.E.2d 436, 442 (2011) (quoting State v. Everhart, 291 N.C. 700,

 702, 231 S.E.2d 604, 606 (1977)).

¶ 26 While “citizens generally have no duty to come to the aid of one who is injured”

 or otherwise in harm’s way, “once [a] defendant [makes] efforts to aid the victim, he

 [is] under a duty to do so with due caution.” In re Z.A.K., 189 N.C. App. 354, 358–59,

 657 S.E.2d 894, 896–97 (2008). For example, this Court found that an instance when

 a land owner gave misleading directions to emergency services, thereby delaying

 possible rescue, was “evidence that [the] defendant[] did not use ordinary care.”

 Hawkins v. Houser, 91 N.C. App. 266, 270, 371 S.E.2d 297, 299 (1988). In another

 case, In re Z.A.K., this Court found a “defendant’s actions were even more egregious

 than [Hawkins,]” when, “[a]fter the victim first became ill . . .[,] [the] defendant lied

 to his father, telling him that everything was fine and sending him away.” In re

 Z.A.K., 189 N.C. App. at 360, 657 S.E.2d at 897 (emphasis added). This Court held

 “[a]t the very least, [the defendant’s] affirmative conduct precluded any other rescuer

 from rendering the aid allegedly necessary to prevent [the victim’s] . . . injuries. At
 STATE V. METCALF

 2021-NCCOA-618

 Opinion of the Court

 the worst, it actively caused her death.” Id. (citation omitted).

¶ 27 Here, there is substantial evidence sufficient for a reasonable juror to find that

 Defendant was culpably negligent in her rescue attempts. Specifically, Defendant

 admitted that she could have removed Archie from the burning home when

 Defendant exited to retrieve water from outside. Additionally, and similar to In re

 Z.A.K., there is substantial evidence from which a reasonable juror could conclude

 that Defendant’s omissions to her neighbors and the firefighters regarding Archie’s

 presence in the burning home “[a]t the very least . . . precluded any other rescuer

 from rendering the aid allegedly necessary to prevent [the victim’s] . . . injuries. At

 the worst, it actively caused [the victim’s] death.” Id. (citation omitted). Defendant

 stating “[t]he kids are with their daddy” and failing to mention Archie in any way

 could lead a reasonable juror to conclude Defendant was culpably negligent in her

 rescue attempts. This Court “is concerned only with sufficiency of the evidence to

 carry the case to the jury and not its weight.” Crawford, 344 N.C. at 73, 472 S.E.2d

 at 925.

¶ 28 In addition to substantial evidence of Defendant’s culpably negligent rescue

 attempts, there is substantial evidence in the Record that Defendant took more

 Xanax in a day than Defendant’s prescription directed. There is also substantial

 evidence in the Record that Defendant was aware she was designated as the

 caretaker for Archie the morning of Archie’s death, because she took time off from
 STATE V. METCALF

 2021-NCCOA-618

 Opinion of the Court

 work to do so. Taking a higher than prescribed dose of Xanax in anticipation of

 serving as Archie’s caretaker was a risk-creating behavior. This Court has stated,

 Risk-creation behavior thus triggers duty where the risk is
 both unreasonable and foreseeable. . . . The orbit of the
 danger as disclosed to the eye of reasonable vigilance [is]
 the orbit of the duty. A duty arises based on evidence
 showing that a defendant should have recognized that [a
 victim], or anyone similarly situated might be injured by
 their conduct.

 In re Z.A.K., 189 N.C. App. at 359, 657 S.E.2d at 897. As Archie’s intended caretaker

 for the morning of his death, and as a creator of risk by over-consuming Xanax,

 Defendant had duties to Archie.

¶ 29 It is not this Court’s duty to weigh the evidence or pinpoint where a reasonable

 jury must have concluded culpable negligence was manifest. It is sufficient to say

 there was substantial evidence to allow the jury to determine the presence of acts or

 omissions adequate to satisfy the culpable negligence element of involuntary

 manslaughter.

 2. Substantial evidence exists to support a finding that Defendant’s culpably
 negligent acts proximately caused Archie’s death.

¶ 30 Proximate cause is a cause “from which any man of ordinary prudence could

 have foreseen that such a result was probable under all the facts as they existed.”

 State v. Cole, 343 N.C. 399, 416, 471 S.E.2d 362, 370 (1996) (quoting State v. Powell,

 336 N.C. 762, 771, 446 S.E.2d 26, 31 (1994)). “Foreseeability is an essential element
 STATE V. METCALF

 2021-NCCOA-618

 Opinion of the Court

 of proximate cause.” Id. The defendant need not actually foresee the precise injurious

 outcome, but “in the exercise of reasonable care, [if] the defendant might have

 foreseen . . . [some] consequences of a generally injurious nature” the cause may be

 deemed sufficiently foreseeable to be a proximate cause. Id. Giving the State the

 benefit of all reasonable inferences, there was substantial evidence from which a

 reasonable juror could conclude that Defendant’s culpably negligent acts proximately

 caused Archie’s death.

¶ 31 The Record tended to show that Archie was alive during the fire. Archie’s

 airway was coated with soot, and his blood contained a lethally high level of carbon

 monoxide in excess of sixty percent. “That’s one indication that [Archie] was alive at

 the time of the fire” and “there had to have been active breathing [by Archie].” There

 was evidence that Archie was located “on [his] back on the floor” during the fire, when

 “the carbon monoxide and the smoke[] fumes tend[] to rise.” Further evidence in the

 Record indicates that “there was at least some period of time . . . that [Archie] would

 have been alive during the course of the fire.”

¶ 32 Assuming all inferences in favor of the State, there is substantial evidence in

 the Record sufficient for a reasonable juror to conclude that a person “in the exercise

 of reasonable care” would have foreseen Archie’s potential injury or death resulting

 from Defendant’s failure to remove Archie from the burning home with Defendant

 upon her exiting the home. Cole, 343 N.C. at 416, 471 S.E.2d at 370. Additionally,
 STATE V. METCALF

 2021-NCCOA-618

 Opinion of the Court

 there is substantial evidence that a reasonable person would foresee that stating

 “[t]he kids are with their daddy” while failing to mention Archie’s presence in the fire

 to anyone would likely stifle potential rescue attempts, thereby causing injury or

 death. Furthermore, there is substantial evidence that Archie was alive during

 Defendant’s exit from the home and for some time as the fire escalated, due to the

 soot in Archie’s airway and carbon monoxide in Archie’s blood. While the specific

 moment of death is uncertain, there was substantial evidence of foreseeability and

 causation which was properly weighed by the jury to determine the element of

 proximate cause.

¶ 33 For the foregoing reasons, the trial court did not err when it denied Defendant’s

 motion to dismiss for insufficient evidence.

 C. Indictment Sufficiency

¶ 34 Defendant asserts for the first time on appeal that Defendant’s short-form

 indictment for involuntary manslaughter was fatally flawed for insufficiently

 alleging the essential elements of the offense, thereby denying the trial court

 jurisdiction to hear the proceeding. Typically, “[a] defendant waives an attack on an

 indictment when the validity of the indictment is not challenged in the trial court.”

 State v. Braxton, 352 N.C. 158, 173, 531 S.E.2d 428, 437 (2000). However, “[w]here

 an indictment is alleged to be invalid on its face, thereby depriving the trial court of

 its jurisdiction, a challenge to that indictment may be made at any time, even if it
 STATE V. METCALF

 2021-NCCOA-618

 Opinion of the Court

 was not contested in the trial court.” State v. Williams, 368 N.C. 620, 622, 781 S.E.2d

 268, 270 (2016) (citation and internal quotation marks omitted). When “[t]he alleged

 failure of a criminal pleading to charge the essential elements of a stated offense” is

 made, as Defendant does in this appeal, the alleged failure “is an error of law that

 this Court reviews de novo.” Id.

¶ 35 N.C. Gen. Stat. § 15-144 states in pertinent part that “it is sufficient in

 describing manslaughter to allege that the accused feloniously and willfully did kill

 and slay [the alleged victim], and concluding as aforesaid.” N.C. Gen Stat. § 15-144

 (2019). The constitutionality of this statutory short-form indictment has been upheld

 by this Court and our Supreme Court, a point which Defendant concedes. Braxton,

 352 N.C. at 174–75, 531 S.E.2d at 437–38; State v. Reynolds, 160 N.C. App. 579, 583,

 586 S.E.2d 798, 801 (2003). Accordingly, this Court must sustain the sufficiency of

 the indictment.

 III. Conclusion

¶ 36 For the foregoing reasons, we hold Defendant received a fair trial, free from

 error.

 NO ERROR.

 Judges ARROWOOD and CARPENTER concur.